**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————————

**JEANINE NARCISSE, ET AL.,**

                              **Plaintiffs,**          **23-cv-4690 (JGK)**

          **- against -**                    <u>**MEMORANDUM OPINION**</u>
                                     <u>**AND ORDER**</u>
**PROGRESSIVE CASUALTY INSURANCE**
**COMPANY, ET AL.,**

                              **Defendants.**
————————————————————————————

**JOHN G. KOELTL, District Judge:**

        The plaintiffs, Jeanine Narcisse and Pamela Palaszynski,
bring this purported class action alleging breach of contract
and violation of New York General Business Law ("GBL") § 349.
The plaintiffs bring this action on behalf of a class of car
owners whose vehicle total-loss claims, paid to non-party
lienholders, were allegedly undervalued by the defendants,
Progressive Casualty Insurance Company ("Progressive Casualty"),
Progressive Max Insurance Company ("Progressive Max"), and
Progressive Advanced Insurance Company ("Progressive Advanced")
(collectively, "Progressive" or the "defendants"). The
defendants move for the second time to dismiss Narcisse's claims
for lack of subject matter jurisdiction and failure to state a
claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and
12(b)(6). For the following reasons, the defendants' motion to
dismiss Narcisse's claims is **denied.**

# I.

## A.

Unless otherwise indicated, the following facts are taken from the Amended Complaint and are accepted as true for purposes of deciding this motion.

The plaintiffs bring this action on behalf of themselves and others similarly situated in New York who made claims to the defendants for the loss of a totaled vehicle. In settling claims, the defendants used valuation reports that applied an allegedly deceptive adjustment, a "Projected Sold Adjustment" ("PSA"), to reduce the actual cash value payable to the totaled vehicle's lienholder. See Am. Compl. ¶ 1, ECF No. 53. The plaintiffs had outstanding debt on their vehicles and owed more on their auto financing than they received in insurance benefits from the defendants, such that all compensation paid by the defendants for the plaintiffs' benefits went directly to the totaled vehicles' lienholders. See id. ¶ 2 n.2.

On November 6, 2020, Narcisse was involved in an accident resulting in the total loss of her vehicle. See id. ¶¶ 14, 29. At the time of the accident, Narcisse had auto insurance through a policy issued by Progressive. See id. ¶ 29.

On August 6, 2021, Palaszynski was involved in an accident resulting in the total loss of her vehicle. See id. ¶¶ 30, 32.

At the time of the accident, Palaszynski had auto insurance through a policy issued by Progressive. See id. ¶ 30.

By November 11, 2020 (for Narcisse), and August 7, 2021 (for Palaszynski), the defendants declared each plaintiff's vehicle to be a total loss and purported to offer each plaintiff the actual cash value of her vehicle, pursuant to the insurance policy. See id. ¶¶ 32-33. The defendants used a "Vehicle Valuation Report" ("Report") created by non-party Mitchell International, Inc. ("Mitchell") in their "total loss settlement process" to calculate the amount due to the plaintiffs. See id. ¶ 33. Each Report purported to contain values for comparable vehicles either sold or listed for sale in the plaintiffs' geographic area, which were then adjusted to account for any differences between the comparable vehicles and the plaintiffs' vehicles in terms of equipment, mileage, and vehicle configuration. See id. ¶ 34.

Relevant to this action, the Reports applied a PSA to the prices of comparable vehicles listed for sale. See id. ¶ 37. In the plaintiffs' cases, the PSA reduced the value attributed to comparable vehicles by approximately 3.5% to 5.6%. See id. The Reports provided no data specific to the comparable vehicles nor any explanation based on industry practices to support the PSA applied, and instead explained that the PSA was "an adjustment

to reflect consumer purchasing behavior (negotiating a different price than the listed price)." See id. ¶ 38.

The plaintiffs allege that the PSA did not reflect market realities and ran contrary to customary car dealer practices. See id. ¶ 40. Before the alleged Class Period, dealerships generally priced vehicles above their market value, which allowed for downward negotiation. See id. ¶ 41. Now, however, and during the alleged Class Period, the Internet makes it easy for consumers to compare prices of identical vehicles across competing dealerships, and therefore dealerships allegedly use sophisticated pricing software to price vehicles at market value and do not tend to negotiate from that price. See id. ¶ 42. As a result, it is less common for dealerships to inflate the initial price for used cars and for car buyers to negotiate a discount from the listed price. See id. ¶¶ 40-42.

The plaintiffs further allege that the PSA was contrary to proper appraisal methodologies, which used advertised prices and made adjustments based only on observed and verifiable data. See id. ¶ 45. The defendants allegedly discarded relevant data that contradicted the PSA, such as ancillary transactions that influenced the sale price but not the actual cash value (for example, trade-ins, warranties and service plans, financing, or employee discounts) and transactions in which the sale price was

4

greater than or equal to the list price. See id. ¶¶ 48-52, 58, 62-63.

The plaintiffs also allege that the PSA did not comply with the geographic limitation of New York's "Regulation 64." See id. ¶ 68. Regulation 64 permits insurers like the defendants to use a "computerized database" like Mitchell's, so long as it "produces statistically valid fair market values for a substantially similar vehicle, within the local market area," meaning "vehicles sold within the 90 days prior to the loss and vehicles which are available" within "a 100-mile radius . . . of the place of principal garagement of the insured's motor vehicle." 11 N.Y.C.R.R. § 216.7; see also Am. Compl. ¶ 69.

According to the plaintiffs, had the defendants not applied the allegedly deceptive and improper PSA, the actual cash value for Narcisse's and Palaszynski's vehicles would have been $526.55 and $535.88 higher, respectively. Am. Compl. ¶ 82.

However, the plaintiffs had different post-claim financing obligations and arrangements. When Narcisse purchased her vehicle, she also purchased a "Guaranteed Asset Protection" ("GAP") contract from non-party Western Diversified Services, Inc. ("Western Diversified"). Id. ¶ 88. Under this GAP contract, Narcisse was entitled to a GAP benefit whereby, if the insured vehicle was declared a total loss and Progressive's total-loss settlement, which was paid to Narcisse's lienholder, was less

than what Narcisse still owed on her auto financing, Western Diversified would pay off the balance remaining on Narcisse's loan. Id. ¶¶ 88-89. Accordingly, although Progressive's payment on Narcisse's total-loss claim was not enough to cover the entire balance remaining on her auto loan, Western Diversified paid a GAP benefit to cover the difference. Id. ¶ 89. Narcisse currently owes nothing to her lender, and she also owes nothing to Western Diversified related to the GAP benefit. Id. ¶ 90.

Palaszynski, meanwhile, did not obtain GAP insurance, although her vehicle was also subject to a lien held by her auto financer. See id. ¶¶ 92-94. Progressive's payment on Palaszynski's total-loss claim was less than what she still owed her lienholder, and therefore she remained personally liable for the outstanding balance owed on the loan that she had used to purchase her vehicle. Id. ¶¶ 93-94. Palaszynski continued paying her lienholder until she fully paid off the loan; she currently owes nothing to her lienholder. Id. ¶ 94.

**B.**

In a related action, Judge Schofield certified a class with the same factual allegations but, to avoid a potential standing issue, limited the class to those plaintiffs who received compensation from the defendants for total-loss payments, as opposed to those plaintiffs for whom any total-loss payment went to the lienholder. See Volino v. Progressive Cas. Ins. Co., No.

6

21-cv-6243, 2023 WL 2532836, at *10 (S.D.N.Y. Mar. 16, 2023).
Judge Schofield then denied a motion to include those potential
class members in the class because the motion failed to meet the
requirements for a motion for reconsideration and because the
motion was untimely. See No. 21-cv-6243, ECF No. 226.

**C.**

On June 2, 2023, Narcisse filed her original complaint,
which contained many of the same allegations included in the
Amended Complaint, but only against Progressive Max and
Progressive Casualty. See Compl., ECF No. 1. Progressive Max and
Progressive Casualty moved to dismiss the original complaint
pursuant to Rules 12(b)(1) and 12(b)(6). See First Mot. to
Dismiss, ECF No. 34. At oral argument on the first motion to
dismiss, the Court expressed concern that the original complaint
insufficiently alleged injury in fact and suggested that
Narcisse consider amending the complaint to cure any such
deficiencies.

On May 31, 2024, Narcisse filed the Amended Complaint,
which added Palaszynski as a plaintiff and Progressive Advanced
as a defendant. See Am. Compl. The Amended Complaint also
contained new allegations regarding the loans that the
plaintiffs used to purchase their vehicles and (in Narcisse's
case) GAP insurance. See id. ¶¶ 83-98. The Amended Complaint
asserts two claims: first, breach of contract, for which the

7

plaintiffs seek compensatory damages or, in the alternative, nominal damages, see id. ¶¶ 109-18; and second, violation of GBL § 349, for which the plaintiffs seek compensatory damages, see id. ¶¶ 119-28. The plaintiffs claim that minimal diversity exists and that federal jurisdiction exists pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1441(a)-(b), 1453. Am. Compl. ¶ 11.

The defendants again move to dismiss Narcisse's claims for lack of subject matter jurisdiction and failure to state a claim. See ECF No. 54. There is no motion to dismiss Palaszynski's claims.

**II.**

To prevail against a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).[1] In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). However, the Court does not draw all reasonable inferences in the plaintiff's favor. Id.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When presented with a motion under both Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the Court should consider the jurisdictional challenge to a given claim first. See Rhulen

Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d
Cir. 1990); see also United States v. Cambio Exacto, S.A., 166
F.3d 522, 526 (2d Cir. 1999) ("Whether a claimant has standing
is the threshold question in every federal case, determining the
power of the court to entertain the suit.").

### III.

The defendants move to dismiss Narcisse's claims for lack
of subject matter jurisdiction based on the contention that
Narcisse lacks Article III standing. See Defs.' Br. at 6-9, ECF
No. 55.

"[T]he irreducible constitutional minimum of standing
consists of three elements. . . . The plaintiff must have (1)
suffered an injury in fact, (2) that is fairly traceable to the
challenged conduct of the defendant, and (3) that is likely to
be redressed by a favorable judicial decision." Spokeo, Inc. v.
Robins, 578 U.S. 330, 338 (2016) (citing Lujan v. Defs. of
Wildlife, 504 U.S. 555, 560-61 (1992)). The first and third
elements—injury in fact and redressability—are at issue on this
motion.

### A.

The defendants argue that the Amended Complaint fails to
allege that Narcisse suffered an injury in fact. According to
the defendants, any alleged underpayment by Progressive did not
cause Narcisse concrete harm because, by her own allegations,

the compensation for her claim was paid in its entirety to her lienholder, and her GAP insurer paid the lienholder the remaining balance on her loan. In addition, it is undisputed that Narcisse currently owes nothing to her lienholder or to her GAP insurer.

In response, Narcisse contends that her arrangements with her GAP insurer and with her lienholder are irrelevant to her contract with Progressive. Narcisse argues that, pursuant to her insurance policy, she (or her lienholder) was entitled to a payment equivalent to the actual cash value of her vehicle, but that Progressive underpaid that amount when it applied the PSA. Moreover, Narcisse asserts, the existence of a breach of contract is itself sufficient to establish injury in fact. See Pls.' Opp'n at 9-17, ECF No. 59.

Injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. A "concrete" injury must be "real, and not abstract." Spokeo, 578 U.S. at 340. "'Concrete' is not, however, necessarily synonymous with 'tangible.'" Id. Rather, "[c]entral to assessing concreteness is whether the asserted harm has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts," such as tangible harms like physical or monetary harm, as well as

11

various intangible harms "includ[ing], for example, reputational harms, disclosure of private information, . . . intrusion upon seclusion," and "harms specified by the Constitution itself." TransUnion LLC v. Ramirez, 594 U.S. 413, 417, 425 (2021).

As an initial matter, the defendants claim that Progressive did not owe any settlement to Narcisse, and instead that "Progressive contractually owed and paid the settlement proceeds directly to Narcisse's lienholder." Defs.' Reply at 7 n.3, ECF No. 60. But that is not quite correct. The policy provides:

> Payment . . . for a loss to a covered auto will be made according to your [i.e., Narcisse's] interest and the interest of [your] lienholder . . . . At our option, payment <u>may</u> be made to both jointly, or to either separately.

Am. Compl., Ex. 10 at 42, ECF No. 53-10 (emphasis added). Accepting the Amended Complaint's allegations as true, Progressive paid Narcisse (or her lienholder) $526.55 less than it should have paid for Narcisse's total-loss claim pursuant to the policy. See Am. Compl. ¶¶ 22, 32, 54, 81-82. That Progressive ultimately opted to pay compensation on Narcisse's claim directly to Narcisse's lienholder does not change the fact that Progressive also had a contractual obligation to Narcisse to pay the true actual cash value of Narcisse's vehicle (either to Narcisse or to the lienholder, at Progressive's option).

Had Progressive not applied the PSA, Narcisse argues that her debt to her lienholder would have been reduced further by

the amount of the PSA. See id. ¶ 85. In Tyler v. Hennepin County, 598 U.S. 631 (2023), the Supreme Court upheld an argument for Article III standing much like Narcisse's. Like the defendants in this case, the defendant in Tyler argued that because the plaintiff's debts exceeded the value of the money that the defendant owed to the plaintiff, the plaintiff "ultimately suffered no financial harm" and "[w]ithout such harm she would have no standing." Id. at 637. But the Supreme Court concluded that the plaintiff "still plausibly allege[d] a financial harm: The [defendant] has kept [money] that belongs to her." Id. "Had [the plaintiff] received the [money], she could have at the very least used it to reduce [her] liability." Id. Similarly, in this case, Narcisse can demonstrate injury in fact because her liability to the lienholder would have been reduced further but for the defendants' PSA deduction.

That Narcisse's GAP insurer covered the balance remaining on Narcisse's loan does not change the analysis. The defendants suggest that it was the GAP insurer who was injured, not Narcisse, but this argument is a distraction. Narcisse's GAP contract was entirely separate from Narcisse's contract with Progressive. At the time of Progressive's alleged breach and underpayment, Narcisse's debt to her lienholder was purportedly reduced by $526.55 less than it would have been had Progressive abided by the terms of the policy. It makes no difference that

Narcisse happened to have GAP insurance and that, <u>after</u> Progressive had allegedly breached, the third-party GAP insurer made up the difference. <u>Cf.</u> <u>Springer v. Cleveland Clinic Emp.</u> <u>Health Plan Total Care</u>, 900 F.3d 284, 287 (6th Cir. 2018) (finding the injury in fact requirement satisfied where the plaintiff's health plan, which provided that the plan would pay 100% for air ambulance services, paid only about 10% of the plaintiff's air ambulance expenses, even though the plaintiff received the ambulance service and the ambulance service provider did not bill the plaintiff for the remaining 90%).

Multiple courts have concluded that insureds like Narcisse have suffered a concrete injury, including in lawsuits against Progressive that assert the same claims. <u>See, e.g.</u>, <u>Reynolds v.</u> <u>Progressive Direct Ins. Co.</u>, 346 F.R.D. 120, 128-29 (N.D. Ala. 2024) (finding that the plaintiff, whose settlement went directly to her lienholder and who had GAP insurance, suffered an Article III injury when Progressive determined the actual cash value of her vehicle to be lower than she had contracted for under her insurance plan); <u>Liberty Mut. Fire Ins. Co. v.</u> <u>Michael Baker Int'l, Inc.</u>, No. 2:19-cv-881, 2022 U.S. Dist. LEXIS 90430, at *24-25 (D. Utah Feb. 10, 2022) ("[T]he fact that a third-party [insurer] stepped in to alleviate the harm resulting from the alleged breach of contract does not erase the insured's injury-in-fact.").

Moreover, breach of contract itself is a concrete injury.

Post-Spokeo and TransUnion, the Supreme Court has yet to address squarely whether a breach of contract, even when the plaintiff appears not to have suffered a financial loss, is itself a concrete injury. Spokeo and TransUnion clarified the concreteness inquiry in the context of Congress's creation of a statutory cause of action. See TransUnion, 594 U.S. at 427 ("Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact."); Spokeo, 578 U.S. at 341 ("Congress'[s] role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."). In those cases, the Supreme Court had no occasion to analyze whether breach of contract bears "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." TransUnion, 594 U.S. at 425; see also Eletson Holdings, Inc. v. Levona Holdings Ltd., 731 F. Supp. 3d 531, 570 (S.D.N.Y. 2024) (distinguishing the alleged statutory violations at issue in Spokeo and TransUnion from

"pre-existing common law rights historically enforceable in both federal and state court").

The Supreme Court came closer to addressing this question in Thole v. U.S. Bank N.A., 590 U.S. 538 (2020), but even Thole is not directly on point. The plaintiffs in Thole were retired participants in U.S. Bank's defined-benefit retirement plan, which the Court described as "more in the nature of a contract," and through which retirees received a fixed payment each month, regardless of the value of the plan at any given moment or the plan fiduciaries' investment decisions. Id. at 540, 543. The Thole plaintiffs had been paid all of their monthly pension benefits up to that point and were slated to receive those same payments for the rest of their lives. Id. at 540. They nonetheless sued U.S. Bank under the Employee Retirement Income Security Act of 1974 ("ERISA"), alleging that U.S. Bank had violated ERISA's duties of loyalty and prudence by mismanaging the plan, and requesting that U.S. Bank repay the plan approximately $750 million in losses that the plan had allegedly suffered. See id. at 540–41. The Court held that the plaintiffs lacked Article III standing to challenge the alleged plan mismanagement, concluding that the plaintiffs lacked a concrete stake in the suit. See id. at 541–42, 547 ("Winning or losing this suit would not change the plaintiffs' monthly pension benefits.").

In this case, the defendants argue that Narcisse is no different from the Thole plaintiffs. See Defs' Br. at 8-9 ("[E]ven had Progressive Max paid more on her total-loss settlement, Narcisse's position would be unchanged—she still would have received nothing and would have owed nothing to her lienholder.").

However, Narcisse is not like the Thole plaintiffs. The Supreme Court stressed that the Thole plaintiffs had received the monthly benefit payments to which they were legally and contractually entitled—and would continue to receive those payments, no matter the outcome of the lawsuit. 590 U.S. at 540. There was no allegation in Thole that U.S. Bank had paid the plaintiffs anything less than what was provided for in their retirement plan. By contrast, in this case, Narcisse alleges that Progressive paid too little on her claim under her policy, and that she therefore did not receive the full benefit of her bargain: compensation equivalent to the actual cash value of her vehicle. Unlike the Thole plaintiffs, Narcisse has alleged that Progressive breached a contract: the insurance policy. For this reason, Thole does not compel dismissal of Narcisse's claims.

The Circuit Courts of Appeals are divided on the issue of whether a breach of contract, standing alone, satisfies the injury in fact requirement. Compare, e.g., Denning v. Bond Pharmacy, Inc., 50 F.4th 445, 451 (5th Cir. 2022)

17

("[T]raditional and recent precedent arising from both the Fifth Circuit and the Supreme Court reflect that a breach of contract is a sufficient injury for standing purposes."), and <u>Springer</u>, 900 F.3d at 287 (concluding that, where the plaintiff was denied benefits he was allegedly owed under an employee benefit plan but suffered no financial loss, the plaintiff nonetheless "suffered an injury within the meaning of Article III"),[2] and <u>Mitchell v. Blue Cross Blue Shield of N.D.</u>, 953 F.3d 529, 536 (8th Cir. 2020) ("The denial of benefits to which a plan participant is contractually entitled is a particularized injury that affects the participant in a personal and individual way. . . . It is also a concrete injury that actually exists."), <u>with, e.g.</u>, <u>Dinerstein v. Google, LLC</u>, 73 F.4th 502, 522 (7th Cir. 2023) ("[A] breach of contract alone—without any actual harm—is purely an injury in law, not an injury in fact."), and <u>Foodbuy, LLC v. Gregory Packaging, Inc.</u>, 987 F.3d 102, 116 (4th

---

[2] Contrary to the defendants' assertions, <u>Springer</u> was not "later eclipsed" by a post-<u>Thole</u> Sixth Circuit Court of Appeals decision, <u>Glennborough Homeowners Association v. U.S. Postal Service</u>, 21 F.4th 410 (6th Cir. 2021). <u>See</u> Defs.' Reply at 5. In <u>Glennborough</u>, where the defendant alleged to have breached the agreement at issue was the federal government, the Sixth Circuit Court of Appeals observed that <u>Spokeo</u>, <u>TransUnion</u>, and <u>Thole</u>, as well as separation-of-powers concerns implicated in cases involving agreements with the federal government, raised "thorny questions" about whether a breach of contract, in those circumstances, constitutes an injury in fact. <u>See id.</u> at 416. But the <u>Glennborough</u> Court found it unnecessary to reach those questions, because the plaintiff in that case "d[id] not even hint in its complaint," let alone plausibly allege, that it had suffered any injury in connection with the alleged breach. <u>See id.</u> Moreover, the <u>Glennborough</u> Court began its analysis of injury in fact by recognizing that, as a general matter, "a breach of a contract between two private parties, standing alone, may suffice as an injury for purposes of constitutional standing." <u>Id.</u> at 415.

Cir. 2021) ("[S]imply being a party to the contract does not alone establish Article III standing.").

Violation of private contract rights is a "harm traditionally recognized as providing a basis for a lawsuit in American courts," whether or not the plaintiff suffered a financial loss as a result. TransUnion, 594 U.S. at 417. Indeed, courts at the Founding shared the "common-law understanding" that "every legal injury necessarily causes damage," and therefore "the fact of breach of contract by itself justified nominal damages." Uzuegbunam v. Preczewski, 592 U.S. 279, 286–87 (2021); see also, e.g., Spokeo, 578 U.S. at 344 (Thomas, J., concurring) (explaining that "[p]rivate rights have traditionally included rights of personal security . . . , property rights, and contract rights," and that "courts historically presumed that the plaintiff suffered a de facto injury merely from having his personal, legal rights invaded"); Springer, 900 F.3d at 292–93 (Thapar, J., concurring) (noting that "common law courts historically . . . entertained breach-of-contract claims even when 'no real loss be proved'" and collecting cases). In short, history supports the proposition that a plaintiff who is a party to a contract between two private parties and who alleges a breach of that contract—and nothing more—has suffered a sufficiently concrete injury for Article III standing purposes.

More fundamentally, the concrete injury that such a plaintiff has suffered is the deprivation of the full benefit of what that plaintiff bargained for. In other words, even when a contract may have incidentally benefited a third party, or even when outside arrangements made with a non-contracting party may make it appear as if the plaintiff suffered no actual financial loss, "contracting parties are entitled to the benefit of their bargain," and an alleged breach is a "per se invasion" of the contracting party's rights. Culwick v. Wood, 384 F. Supp. 3d 328, 339 (E.D.N.Y. 2019); see also Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc., No. 16-cv-5265, 2021 WL 4263717, at *2-3 (S.D.N.Y. Sept. 20, 2021) (finding that "[p]atients who were absolved of any out-of-pocket liability by their healthcare provider" and thus suffered no monetary harm had nonetheless suffered a concrete harm: the "denial of the benefit of their bargain").

In the similar context of health insurance, at least three Circuit Courts of Appeals have employed the same reasoning in concluding that the denial of plan benefits is a concrete injury even when the patients were not directly billed for their medical services. See Springer, 900 F.3d at 384 ("Springer suffered an injury within the meaning of Article III because he was denied health benefits he was allegedly owed under the plan. Like any private contract claim, his injury does not depend on

20

allegation of financial loss. His injury is that he was denied the benefit of his bargain."); Mitchell, 953 F.3d at 536 ("[P]lan participants are . . . injured when a plan administrator fails to pay a healthcare provider in accordance with the terms of their benefits plan. This follows from the fact that plan participants are contractually entitled to plan benefits. The wrongful denial of plan benefits breaches the parties' contract and deprives the participant of the benefit of their bargain."); N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare, 781 F.3d 182, 193 (5th Cir. 2015) (explaining that "a patient suffers a concrete injury if money that she is allegedly owed contractually is not paid, regardless of whether she has directed the money be paid to a third party for her convenience," because, among other things, "failure to pay . . . denies the patient the benefit of her bargain").

In the union context, the Second Circuit Court of Appeals has likewise relied on this "benefit of the bargain" concept. The Court of Appeals has held that a union had Article III standing to sue to enforce a union agreement that required an employer to pay benefits to retirees. See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Cookson Am., Inc., 710 F.3d 470, 474-75 (2d Cir. 2013) ("Because the Union was a party to the [agreement], [the employer]'s refusal to pay retiree benefits under that agreement

will injure the Union by depriving it of the benefit of its
bargain."). That the benefits would accrue to third parties (the
retirees), the Court of Appeals explained, "does not change the
fact that the Union has negotiated for the benefit and has
incurred obligations in order to secure it." Id. at 475.[3]

In this case, the Amended Complaint alleges that
Progressive paid less on Narcisse's claim than the parties had
bargained for and that Progressive thereby breached the
insurance contract with Narcisse. Accordingly, the plaintiff has
properly alleged injury in fact for her breach of contract and
GBL § 349 claims.

**B.**

Having established injury in fact, Narcisse must also
satisfy the redressability requirement for Article III standing.
Narcisse must show that it is "likely" that her injury "will be
redressed by a favorable decision." Lujan, 504 U.S. at 561. For
her breach of contract claim, Narcisse seeks compensatory
damages of at least $526.55 (the amount that Progressive
allegedly underpaid on her total-loss claim) or, in the

---

[3] The defendants contend that these denial-of-benefits cases are inapposite
because "[a] benefit denied is distinguishable from a benefit provided—but
allegedly underprovided." Defs.' Reply at 5 n.1, ECF No. 60. But that is not
a meaningful distinction. The key point in the denial-of-benefit cases upon
which Narcisse relies is that those plaintiffs were denied the benefit of
their bargain. In a case where a benefit is allegedly underprovided, the
plaintiff is likewise denied the benefit of the plaintiff's bargain, just to
a lesser degree than if the benefit had been denied completely.

alternative, nominal damages. For her GBL § 349 claim, Narcisse
seeks compensatory or statutory damages.

In this case, compensatory damages would redress Narcisse's
injury. In general, when a plaintiff alleges breach of contract
as the injury in fact, "[a] court can redress this injury by
awarding the contractual benefits to which the participant is
entitled." Mitchell, 953 F.3d at 536.

If Narcisse is unable to prove her entitlement to
compensatory damages, nominal damages could redress her injury.
"[A] request for nominal damages satisfies the redressability
element of standing where a plaintiff's claim is based on a
completed violation of a legal right." Uzuegbunam, 592 U.S. at
292. Narcisse allegedly experienced a completed violation of her
contractual rights when Progressive failed to pay the true
actual cash value of her insured vehicle on her total-loss
claim. Indeed, "[f]or two centuries, courts have recognized that
a party who suffers only nominal damages from a material breach
may still seek relief in court against the breaching party." See
Eletson Holdings, 731 F. Supp. 3d at 571 (collecting cases); see
also Restatement (First) of Contracts § 328 (Oct. 2024 Update)
("Where a right of action for breach exists, but no harm was
caused by the breach, or the amount of harm caused thereby is
not substantial or is not so established that compensatory
damages will be given . . . , judgment will be given for nominal

23

damages . . . .""). As the Supreme Court concluded, "[b]ecause every violation of a right imports damage, . . . nominal damages can redress [the plaintiff]'s injury even if [the plaintiff] cannot or chooses not to quantify that harm in economic terms." Uzuegbunam, 592 U.S. at 293.

In sum, Narcisse has established an injury in fact that is traceable to Progressive's alleged conduct and that can be redressed by an award of compensatory or nominal damages. Narcisse therefore has standing to bring her claims. The defendants' motion to dismiss for lack of subject matter jurisdiction is **denied.**

**IV.**

The defendants also move to dismiss Narcisse's claims pursuant to Rule 12(b)(6). The defendants contend that Narcisse has failed to allege damages, which is an element of a breach of contract claim, or injury, which is an element of a GBL § 349 claim. See Defs.' Br. at 9–11.

"Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." First Invs. Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998).

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing

of any service in this state." To state a GBL § 349 claim, a
plaintiff must allege (1) "that the challenged act or practice
was consumer-oriented"; (2) that it was materially misleading;
and (3) "that the plaintiff suffered injury as a result of the
deceptive act." Stutman v. Chem. Bank, 731 N.E.2d 608, 611 (N.Y.
2000). In addition, to recover under the statute, a plaintiff
must demonstrate "actual" injury, "though not necessarily
pecuniary harm." Id. at 612.

Narcisse has stated a claim for breach of contract. As
explained above, Narcisse has alleged that Progressive paid less
than it was required to pay pursuant to its contract with
Narcisse, thereby causing damages. If, for whatever reason,
Narcisse cannot recover that amount from Progressive, Narcisse
can still recover nominal damages for Progressive's breach of
its contract with Narcisse. Under New York law, "nominal damages
are always available in breach of contract actions." Ely-
Cruikshank Co., Inc. v. Bank of Montreal, 615 N.E.2d 985, 987
(N.Y. 1993); see also Luitpold Pharms., Inc. v. Ed. Geistlich
Sohne A.G. Fur Chemische Industrie, 784 F.3d 78, 87 (2d Cir.
2015) (concluding that a breach of contract claim could not be
dismissed because the plaintiff "would have plausible claims for
nominal damages," even if the plaintiff's allegations of
substantial damages were "too speculative"). The availability of

25

nominal damages therefore precludes dismissal of Narcisse's breach of contract claim.

Similarly, Narcisse has stated a GBL § 349 claim because she has alleged that she suffered an "actual" injury as contemplated by the statute. Narcisse alleges that, but for Progressive's purported deception, Progressive would have paid more on her total-loss claim, and her remaining indebtedness to her lienholder would have been reduced by a greater amount. This is an "actual" injury.

Accordingly, the defendants' motion to dismiss Narcisse's claims pursuant to Rule 12(b)(6) is **denied**.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss Narcisse's claims is **denied**. The Clerk is directed to close all pending motions. The parties should submit a Rule 26(f) report in fourteen (14) days.

**SO ORDERED.**

Dated:    New York, New York
          April 14, 2025

                                    John G. Koeltl
                            United States District Judge